**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**REGINALD O. SIMPSON**                                                    **PLAINTIFF**

**VS.**                                                    **CIVIL ACTION NO. 5:10cv15-MTP**

**CHRISTOPHER EPPS, et al.**                                                    **DEFENDANTS**

**OPINION AND ORDER**

THIS MATTER is before the court on the Motion for Summary Judgment [57] filed by

Defendants Jacquelyn Banks and Shirley Brown.[1]  Having reviewed the submissions of the

parties and the applicable law, the court finds that the Defendants' Motion for Summary

Judgment [57] should be granted.

FACTUAL BACKGROUND

Plaintiff Reginald Simpson, proceeding *pro se* and *in forma pauperis*, filed his Complaint

[1] pursuant to 42 U.S.C. § 1983 on February 11, 2010.  Through his complaint, and as clarified

during his *Spears*[2] hearing, Plaintiff alleges a claim against Shirley Brown for failure to protect;

a claim against Warden Jacquelyn Banks for denial of medical care; and claims against

Christopher Epps and Emmitt Sparkman for failure to protect and retaliation.  *See* Omnibus

Order [26].  The allegations in Plaintiff's complaint occurred while he was a post-conviction

inmate at the Wilkinson County Correctional Facility ("WCCF") in Woodville, Mississippi.[3]

---

[1]Defendants Christopher Epps and Emmitt Sparkman have also filed a Motion for
Summary Judgment [52], which will be addressed by separate opinion.

[2]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).  Plaintiff's *Spears* hearing took place
on April 22, 2010.  *See* Transcript [68].

[3]Plaintiff was housed at WCCF from approximately May 28, 2009 - August 19, 2009.  Tr.
[68] at 8; Ex. A to Motion [57-1].

1

Plaintiff is currently incarcerated at the South Mississippi Correctional Institution ("SMCI")

serving a twenty-year sentence after having been convicted of armed robbery and two counts of

aggravated assault in Tunica County.

## STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most

favorable to the Plaintiff, the Defendants demonstrate that there is no genuine issue of material

fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161,

1164 (5th Cir. 1995). If the Defendants fail to discharge the burden of showing the absence of a

genuine issue concerning any material fact, summary judgment must be denied. *John v.

Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a

question of law that this court must decide, and in making that decision, it must "draw inferences

most favorable to the party opposing the motion, and take care that no party will be improperly

deprived of a trial of disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy

regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871,

902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or

the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A.*, *Inc.*, 14 F.3d 1082, 1086 (5th

Cir. 1994), is not enough to create a real controversy regarding material facts. In the absence of

proof, the court does not "assume that the nonmoving party could or would prove the necessary

facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, Section

1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*,

816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in

order for a local governmental entity to have liability under Section 1983, a plaintiff must prove

that a policy, custom or practice of that local government entity was the "moving force" behind

the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

**Failure to Protect**

Plaintiff claims that on August 10, 2009, he was returning from the dining hall, and

before the hallway had cleared and the security gate had been closed, Defendant Shirley Brown,

a correctional officer at WCCF, opened the door to the other "section" or "zone" and four gang

members[4] came out into the hallway and attacked him.[5] Plaintiff claims that the four inmates

stabbed him with shanks 18 times in his back and stomach. He believes that Officer Brown was

involved in the attack - specifically, that his attackers paid her so that she would open the door.

This belief is based upon Plaintiff's prison experience, as well as what he has heard from other

inmates who are gang members. As a result of the foregoing, Plaintiff asserts a claim for failure

to protect against Officer Brown. Tr. [68] at 8-13.

Under the Eighth Amendment, prison officials have a duty to protect inmates from

violence by other prisoners or prison staff. *Hill v. Thomas*, No. 08-50529, 2009 WL 1181504, at

*1 (5th Cir. May 1, 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Horton v.

Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995)); *Dilworth v. Box*, 53 F.3d 1281, No. 94-41088, 1995

WL 295885, at *1-*3 (5th Cir. Apr. 20, 1995); *Doe v. Georgia Dep't Corr.*, 245 F. App'x 899,

903 (11th Cir. 2007) (citing *Farmer*, 511 U.S. at 837). However, not every injury "by one

---

[4]The four inmates involved in the assault on Plaintiff were Spencer Whitfield, Frederick
Lane, Melvin Parker and Deron Jones. See Ex. B to Motion [57-2].

[5]Plaintiff explained that according to policy, only one section or zone can eat at once.

prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Hill*, 2009 WL 1181504, at *1 (citing *Farmer*, 511 U.S. at 834; *Horton*, 70 F.3d at 401).

To prevail on a failure to protect claim, Plaintiff must show that "he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (citing *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998)). Deliberate indifference consists of the official being aware of both the "facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (quoting *Farmer*, 511 U.S. at 837). Furthermore, the Fifth Circuit has held that a negligent failure to protect an inmate is not tantamount to a constitutional violation. *Dilworth*, 1995 WL 295885, at *1-*3 (granting defendants' motion for summary judgment even though the plaintiff alleged he sent a letter to the sheriff notifying him that several guards were harassing him; the court reasoned that the letters failed to establish a genuine issue of material fact regarding whether the sheriff was deliberately indifferent to the plaintiff's alleged risks).

According to the incident report completed by Officer Brown, on August 10, 2009, at approximately 11:54 a.m., she was posted in South Hall for "chow traffic." *See* Incident Report, Ex. E to Motion [57-5] at 4. Officer Brown noticed four inmates standing in the C-D-E Sally Port and advised them to go back to "Echo" pod. They refused and stated they were going to see their case manager. She then advised them to step back in, and when the door opened the four inmates pushed past Officer Brown through the door and ran into the South Hall and began

5

assaulting Plaintiff. Officer Brown and Officer E. Jackson called a "code blue"[6] and staff

responded. *Id.*

The incident report and affidavit completed by Earnestine Jackson, a correctional officer

at WCCF who witnessed the incident, corroborates the statement made by Officer Brown. *See*

Affidavit and Incident Report, Ex. B to Motion [57-2]. Officer Jackson's affidavit further states

that Officer Brown tried to keep the door closed once the inmates started pressing through, but

they overpowered her. *Id.* Officer Jackson's sworn testimony reflects that a Code Blue was

immediately called and once officers responded, Plaintiff was taken to the medical department.

*Id.*

According to the Incident Investigation Report completed by Ricky Jackson, Chief of

Unit Management, the initial investigation revealed that the assault against Plaintiff was by

members of his own gang, the Gangster Disciples. The assault was related to an ongoing feud

with high ranking members of the Gangster Disciples. Plaintiff had allegedly stepped away from

his leadership role in the organization after leaving the Gang Unit at Parchman. The Report

further stated that an interview with Plaintiff revealed that Inmate Jones called the "hit" on him

because he was no longer affiliated with the gang, but that Inmate Jones was still intimidated by

Plaintiff. The Report did not mention any alleged involvement by Officer Shirley Brown. *See*

Incident Report, Ex. E to Motion [57-5] at 1-3.

The sworn testimony of Officer Earnestine Jackson reflects that she had no knowledge

that the inmates were planning to attack Plaintiff, and she has no information that Officer Brown

had prior knowledge of the attack. Officer Jackson's affidavit further states that Officer Brown

---

[6]A code blue indicates a fight between inmates. *See* Incident Report, Ex. E to Motion
[57-5] at 1.

did not open the door that let the attacking inmates through, and that the central control officer

controls access to that door. Finally, Officer Jackson states that there was no indication at any

time prior to the August 10, 2009, altercation that Plaintiff was in danger of an attack from other

inmates.[7] Officer Jackson's affidavit reflects that neither she nor Officer Brown had any notice

that an attack was about to happen, but reacted as necessary in order to maintain order and

security. *See* Jackson Affidavit, Ex. B to Motion [57-2].

Moreover, Defendants point out that although Plaintiff was familiar with the red-tag[8]

process, he never asked that the inmates who attacked him be red-tagged.[9] Based on the

---

[7]Warden Banks' sworn affidavit also reflects that she had no knowledge that Plaintiff perceived a threat to his safety from any inmate housed at WCCF. *See* Ex. A to Motion [57-1]. However, Plaintiff claims he did report threats made by Security Threat Group ("STG") members to Warden Banks. Response [59] at 2; Memo. [61] at 6.

[8]Defendants submit that the "red-tag" process is procedure that allows inmates who are intimidated or threatened by other inmates to separate themselves from those inmates. Memo. [58] at 2.

[9]Plaintiff claims he attempted to use the red-tag separation procedure but was told by Warden Banks that it would not serve a purpose because the inmates he requested separation from were housed in a different section of the facility and he would have no direct contact with them. *See* Plaintiff's Affidavit, Ex. E to Response [60-2]; Memo. [61] at 3. Even accepting this as true, this does not establish that Officer Brown had knowledge that Plaintiff attempted to red-tag the inmates involved in the attack.

The court further notes that co-Defendant Emmitt Sparkman's affidavit, attached as Exhibit D to his Motion for Summary Judgment [52], reflects that he did receive correspondence from Plaintiff regarding his claim of being in fear for his life by STG inmates at SMCI, but that he did not identify any specific inmates. He further states that Plaintiff is allowed no direct contact with offenders he has "red tagged" or placed in his "keep separates" list at his current housing assignment. *See* Ex. D to Motion [52-4].

Further, while the inmates involved in the assault on Plaintiff (Inmates Spencer Whitfield, Frederick Lane, Melvin Parker and Deron Jones) are listed on his "keep separates" list, the effective date for those inmates is dated August 11, 2009, the date after the attack on Plaintiff. *See* Ex. F to Motion [52-6].

foregoing, other than Plaintiff's conclusory allegations,[10] there is no competent summary

judgment evidence to show that Officer Brown was somehow in on the assault or that she was

deliberately indifferent to Plaintiff's need for protection from a substantial risk of serious harm.

*See Grissom*, 1993 WL 560256, at *3 (internal quotations and citations omitted; brackets in

original) ("Wantonness, in the context of a failure-to-protect claim, requires that the defendant

be conscious of the inevitable or probable results of [his] failure to take preventative action.").

Indeed, Officer Jackson's sworn testimony reflects that Officer Brown was not even in control of

opening the door, and that the central control officer controls access to that door. *See* Jackson

Affidavit, Ex. B to Motion [57-2].

To the extent Plaintiff alleges claims against Officer Brown in her official capacity,

which would in effect be a claim against WCCF, Plaintiff's claims fail as a matter of law. As

stated above, there is no respondeat superior liability under Section 1983. *See supra*, *Oliver,* 276

F.3d at 742 & n.6. Further, Plaintiff has failed to allege, much less demonstrate that WCCF

implemented a policy, custom or practice that was the "moving force" behind the alleged

constitutional violation. *See Monell*, 436 U.S. at 694.

Based on the evidence before the court, Plaintiff has failed to create a genuine issue of

material fact as to whether Officer Shirley Brown was deliberately indifferent to his need for

protection. Accordingly, the court concludes that Shirley Brown is entitled to judgment as a

matter of law as to Plaintiff's claims against her, in both her individual and official capacities.

---

[10]Plaintiff concedes that his allegation that Officer Brown was paid to open the door for
the attackers is hearsay, but claims he has witnesses who will testify that Officer Brown
overheard conversations by the attackers regarding the planned assault on Plaintiff. Memo. [61]
at 7.

**Denial of Adequate Medical Care**

Plaintiff alleges a claim against Warden Jacquelyn Banks for the denial and/or delay of adequate medical treatment in violation of the Eighth Amendment. Specifically, he claims he was denied adequate medical treatment for the wounds resulting from the assault described above. Plaintiff claims he was stabbed with shanks 18 times in his back and stomach. Following the assault, Plaintiff claims that he was taken to the clinic and was then taken by ambulance to Centreville Hospital, where his wounds were dressed and stitched and he stayed for a day and a half. Then he was taken back to WCCF where, according to Plaintiff, he was kept in a "dungeon-like cell" for the next seven days. Plaintiff explained that this cell had no windows, the lights remained on 24 hours a day, and the bed was on a concrete slab only a few inches above the floor. Plaintiff testified that he did not know why he was in this cell. Plaintiff claims that while in this cell he was not getting the medical attention he needed: pain medication and bandage changes. However, Plaintiff conceded that if he banged on the door someone would come change his bandages, and after his first two days in the cell he started receiving pain medication. After seven days, Plaintiff claims he was transferred to Central Mississippi Correctional Facility ("CMCF"). *See* Tr. [68] at 13-20.

When asked to clarify his claims against Warden Jacquelyn Banks, Plaintiff testified that while he was in the "dungeon-like cell" he was complaining to her that he was not receiving his pain medications, that he was bleeding through his bandages and that he could not get off his bed to get his food trays, but she was not responsive. Plaintiff claims that he complained to Banks in person on one occasion. At that time, Plaintiff claims that he asked her why he was in that cell, and she told him that he would be there until a decision was made to move him. *See* Tr. [68] at 13-19.

9

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 F. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838. Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 F. App'x at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). The Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006).

10

Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

The record reflects that Plaintiff was taken to Field Memorial Community Hospital in Centreville, Mississippi by ambulance shortly after the assault on August 10, 2009. Plaintiff was examined by Dr. Richard J. Field, III, who noted that Plaintiff had 13 stab wounds. Plaintiff was sedated and his wounds were cleansed and repaired with skin clips, and some of the wounds were packed with Iodoform. Dr. Fields noted no chest or abdominal wall penetration. Plaintiff was given antibiotics and tetanus toxoid. Plaintiff was discharged on August 12, 2009. *See* Ex. D to Motion [57-4].

After returning to WCCF, Plaintiff was kept in the medical observation unit from August 12, 2009 - August 19, 2009, when he was transferred to another facility. From August 12 - August 13, 2009, Plaintiff was under constant evaluation by medical staff and was checked on every fifteen minutes by security staff. *See* Exs. A and D to Motion [57]. From August 14- August 19, 2009, Plaintiff was evaluated on a routine basis in the medical unit. The sworn affidavit of Sharonda Rodgers, a registered nurse employed in the medical department at WCCF, states that there is no evidence in Plaintiff's medical file that any medical requests went unanswered. *See* Ex. D to Motion [57-4]. The affidavits of Ms. Rodgers and Warden Banks state that Plaintiff's cell in the medical unit was a cell with a bunk, mattress, pillow and other normal necessities. *See* Exs. A and D to Motion [57].

Warden Banks' sworn testimony reflects that she came by Plaintiff's cell on August 12, 2009, the day he returned from the hospital, to check on him and that she did not ignore any medical requests from Plaintiff. Warden Banks states that the nurses in the unit were tending to

Plaintiff's needs and giving him food and medication consistent with his needs.  Warden Banks

states that she never ignored Plaintiff's requests, and confirmed on August 12, 2009 that he was

receiving medical treatment and pain medications.  She never received any other written or

verbal request from Plaintiff, and states that she has no day-to-day involvement with the medical

department at WCCF.  *See* Ex. A to Motion [57].

In his opposition, Plaintiff rehashes the allegations made during his *Spears* hearing.  *See*

Response [59]; Affidavit [60-2]; Memo. [61].  He also claims he was denied a shower for seven

days, despite Dr. Fields' discharge instructions for a "daily cleanse in shower."[11]  *See* Response

[59], Ex. C to Response.  According to the Observation Monitoring Form, Plaintiff was given a

bath or shower at 16:35 hours on August 12, 2009, and at 10:05 a.m. on August 13, 2009.  *See*

Ex. 1 [57-1] at 5, 7.  There are no other observations forms dated after August 13, 2009.

Plaintiff was transferred to another facility on August 19, 2009.  Even assuming Plaintiff went

without a shower or bath for six days, this does not amount to a constitutional violation.  *See*

*Carter v. Strain*, No. 09-15, 2009 WL 3231826, at *2 (E.D. La. Oct. 1, 2009) (holding that a

single shower during an eight-day period "was merely a brief deprivation which would not

violate the constitution"); *Holloway v. Gunnell*, 685 F.2d 150, 156 n.6 (5th Cir. 1982) ("A

number of courts have held that one or two showers a week is sufficient to satisfy constitutional

requirements."); *McAllister v. Strain*, No. 08-5174, 2009 WL 500560, at *3 (E.D. La. Feb. 25,

2009) ("Short term sanitation restrictions, however, although admittedly unpleasant, do not

amount to a constitutional violation.").  Moreover, regarding his allegations that Dr. Fields'

"daily cleanse" discharge instructions were not followed, Plaintiff has failed to show that he was

---

[11]Plaintiff made this allegation in his complaint, but did not mention it during his *Spears*
hearing.

substantially harmed from the alleged seven-day period without a shower. While it may have been unpleasant, he does not claim he suffered an infection or other medical malady from the denial of the shower. *See Mendoza*, 989 F.2d at 195.

Plaintiff has failed to show that Warden Banks was deliberately indifferent to his serious medical needs. *See Davidson*, 91 F. App'x at 964. Based on the evidence before the court, Warden Banks never refused to treat Plaintiff, ignored his complaints, or denied him medical treatment. To the contrary, Warden Banks checked on Plaintiff the day he returned from the hospital and confirmed he was receiving medical treatment. *See* Ex. A to Motion [57-1]. Moreover, Warden Banks is a supervisory official at WCCF and is not a medical professional, and has stated that she has no day-to-day involvement with the medical department at WCCF. *See Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998); *Stewart v. Murphy*, 174 F.3d 530, 536 (5th Cir. 1999) (holding that medical director at Parchman was not deliberately indifferent to plaintiff's serious medical needs, where director was not one of plaintiff's treating physicians and had limited contact with plaintiff); *Hailey v. Savers*, 240 F. App'x. 670, 672 (5th Cir. 2007) (affirming dismissal of prison medical administrator because plaintiff "failed to allege specific facts to demonstrate that [administrator] had personal involvement in placing [plaintiff] in a job assignment that posed a substantial risk of harm or that [administrator] implemented policies to physically harm [plaintiff]").

Even assuming Plaintiff was denied pain medication for two days and had to "bang on the door" to get someone to change his bandages, he has failed to show that such denial and/or delay was due to Warden Banks' deliberate indifference. Even if it were, a delay in medical treatment only constitutes deliberate indifference when it results in substantial harm. *Mendoza*, 989 F.2d at 195. Plaintiff has failed to show he was substantially harmed by the alleged two-day

delay in getting pain medication.

To the extent Plaintiff alleges claims against Warden Banks in her official capacity, which would in effect be a claim against WCCF, Plaintiff's claims fail as a matter of law. As stated above, there is no respondeat superior liability under Section 1983. *See supra*, *Oliver,* 276 F.3d at 742 & n.6. Further, Plaintiff has failed to allege, much less demonstrate that WCCF implemented a policy, custom or practice that was the "moving force" behind the alleged constitutional violation. *See Monell*, 436 U.S. at 694.

Based on the evidence before the court, Plaintiff has failed to create a genuine issue of material fact as to whether Warden Banks was deliberately indifferent to his serious medical needs. Accordingly, the undersigned concludes that Warden Banks is entitled to judgment as a matter of law as to Plaintiff's claims against her, in both her individual and official capacities.

CONCLUSION

For the reasons stated above, the court finds that Defendants' Motion for Summary Judgment [57] should be granted.[12] Accordingly,

IT IS, THEREFORE, ORDERED:

That the Defendants' Motion for Summary Judgment [57] is GRANTED and that Jacquelyn Banks and Shirley Brown are dismissed from this action with prejudice.

---

[12]Because the court finds that Plaintiff has failed to establish a genuine issue of material fact as to whether Defendants Brown and Banks violated his constitutional rights, the court does not address Defendants' exhaustion argument. The court notes Plaintiff's claims that he could not write for days after the assault due to his injuries and because he was on pain medication. He claims he submitted an administrative remedy request to the legal claims adjudicator in September 2009 while housed at Carroll County Regional Facility, and submitted an emergency grievance to Commissioner Epps and never received a response. *See* Response [59] at 3-4.

SO ORDERED this the 15th day of September, 2010.

s/ Michael T. Parker
United States Magistrate Judge