**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**REGINALD O. SIMPSON**                                                                           **PLAINTIFF**

**VS.**                                                          **CIVIL ACTION NO. 5:10cv15-MTP**

**CHRISTOPHER EPPS, et al.**                                                       **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

THIS MATTER is before the court on the Motion for Summary Judgment [52] filed by

Defendants Christopher B. Epps and Emmitt L. Sparkman.  Having reviewed the submissions of

the parties and the applicable law, the court finds that the Defendants' Motion for Summary

Judgment [52] should be granted.

FACTUAL BACKGROUND

Plaintiff Reginald Simpson, proceeding *pro se* and *in forma pauperis*, filed his Complaint

[1] pursuant to 42 U.S.C. § 1983 on February 11, 2010.  Through his complaint, and as clarified

during his *Spears*[1] hearing, Plaintiff alleges claims against Christopher Epps (MDOC

Commissioner) and Emmitt Sparkman (MDOC Deputy Commissioner) for failure to protect and

retaliation, a claim against Shirley Brown for failure to protect, and a claim against Warden

Jacquelyn Banks for denial of medical care.[2]  *See* Omnibus Order [26].  The allegations in

---

[1]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).  Plaintiff's *Spears* hearing took place
on April 22, 2010.  *See* Transcript [68].

[2]The claims against Shirley Brown and Warden Jacquelyn Banks have been dismissed.
*See* Order [69].  While Plaintiff references a due process violation in his complaint, he did not
allege or mention any due process violations during his *Spears* hearing.  *See* Transcript [68];
*Hurns v. Parker*, 1998 WL 870696, at *1 (5th Cir. Dec. 2, 1998); *Riley v. Collins*, 828 F.2d 306,
307 (5th Cir. 1987) (stating that plaintiff's claims and allegations made at *Spears* hearing
supersede claims alleged in complaint).  Moreover, although the Defendants brief Plaintiff's

1

Plaintiff's complaint occurred while he was a post-conviction inmate at the Wilkinson County

Correctional Facility ("WCCF") in Woodville, Mississippi.[3]  Plaintiff is currently incarcerated at

the South Mississippi Correctional Institution ("SMCI") serving a twenty-year sentence after

having been convicted of armed robbery and two counts of aggravated assault in Tunica County.

Plaintiff's tentative release date is March 2, 2018.

STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most

favorable to the Plaintiff, the Defendants demonstrate that there is no genuine issue of material

fact and that they are entitled to judgment as a matter of law.  *Woods v. Smith,* 60 F.3d 1161,

1164 (5th Cir. 1995).  If the Defendants fail to discharge the burden of showing the absence of a

genuine issue concerning any material fact, summary judgment must be denied.  *John v.

Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985).  The existence of an issue of material fact is a

question of law that this court must decide, and in making that decision, it must "draw inferences

most favorable to the party opposing the motion, and take care that no party will be improperly

deprived of a trial of disputed factual issues."  *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy

regarding material facts.  "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871,

902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or

---

abandoned due process claim in their Motion for Summary Judgment [52][54], they also include
names of parties (i.e., Nina Enlers and Quinton Williams) who are not and never have been
defendants in this action.  *See* Memorandum [54] at 1.  The Omnibus Order clearly sets forth the
Plaintiff's claims as clarified and amended by his *Spears* testimony.  *See* Omnibus Order [26].

[3]Plaintiff was housed at WCCF from approximately May 28, 2009 - August 19, 2009.  Tr.
[68] at 8; Ex. A to Co-Defendants' Motion [57-1].

the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th

Cir. 1994), is not enough to create a real controversy regarding material facts.  In the absence of

proof, the court does not "assume that the nonmoving party could or would prove the necessary

facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983.  However, Section

1983 "neither provides a general remedy for the alleged torts of state officials nor opens the

federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the

state or its officers."  *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981).  Rather, "[i]t affords a

remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or

immunities secured by the Constitution and laws' of the United States."  *White*, 660 F.2d at 683

(quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior*

liability."  *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*,

828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials

cannot be held liable for the actions of subordinates under any theory of vicarious liability.").

"To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants'

participation in the alleged wrong, specifying the personal involvement of each defendant."

*Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290,

292 (5th Cir. 1992)).  Thus, supervisory prison officials may be held liable for a Section 1983

violation only if they either were personally involved in the constitutional deprivation or if there

is a "sufficient causal connection between the supervisor's wrongful conduct and the

constitutional violation." *Thompkins*, 828 F.2d at 304; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

**<u>Retaliation</u>**

Plaintiff claims that prior to his arrival at WCCF, he was placed on Security Threat Group[4] ("STG") status while at SMCI. He was apparently taken out of STG status prior to his transfer to WCCF, but was placed on STG status at some point after the instant lawsuit was filed. Plaintiff is not currently on STG status, but is housed in an STG unit. Plaintiff claims he never should have been placed on STG status, and that he was placed on STG status while at Parchman in retaliation for a lawsuit he filed in 2006 against Christopher Epps and Emmitt Sparkman in the Northern District of Mississippi for use of excessive force.[5] He claims that the day after he filed

---

[4]A Security Threat Group is "Any formal or informal organization, association, or group of persons, which may possess a common name, identifying sign or symbol whose members or associates currently engage in or have engaged in illegal activities prior to confinement and/or MDOC policy violations/unlawful acts during confinement." *Skinner v. Bufkin*, No. 2:08cv143-MTP, 2009 WL 2499788, at *2 n.3 (S.D. Miss. Aug. 13, 2009) (quoting MDOC Policy SOP Number 16-19-03).

[5]Plaintiff avers that he won this lawsuit in 2009.

the prior lawsuit he was placed on STG status, which he claims is the same thing that happened in this case.

To prevail on claim of retaliation, Plaintiff must establish "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his . . . exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998); *see also Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).  Plaintiff "must allege more than his personal belief that he is the victim of retaliation." *Jones*, 188 F.3d at 325. Mere conclusionary allegations of retaliation are insufficient; Plaintiff must present either direct evidence of retaliatory motivation or "a chronology of events from which retaliatory motivation may be plausibly inferred." *Woods*, 60 F.3d at 1166 (internal citations and quotations omitted). To prove causation, Plaintiff  must show that "but for the retaliatory motive the complained of incident . . . would not have occurred." *McDonald*, 132 F.3d at 231 (internal citations and quotations omitted).

Plaintiff claims that he was first placed on STG status in retaliation for a lawsuit he filed on or about April 13, 2006 against Epps, Sparkman, and others in the Northern District of Mississippi for use of excessive force, Case No. 4:06cv59.  As Defendants point out, Christopher Epps was a named Defendant in this action, but Emmitt Sparkman was not.  Commissioner Epps was dismissed by directed verdict after Plaintiff's case in chief.  *See* Response [73] at 10.  On February 27, 2009, the jury returned a verdict against Defendant Thomas Townsend for excessive force, awarding Plaintiff $1,500.00 in damages.  *See* Ex. A to Motion [52-1] at 11.

Plaintiff has failed to establish Emmitt Sparkman's or Commissioner Epps' intent to retaliate against him for filing the aforementioned lawsuit in April 2006.  As stated above, Mr.

Sparkman was not even named as a Defendant in the lawsuit, and Plaintiff has failed to present either direct evidence of retaliatory motivation by Mr. Epps or "a chronology of events from which retaliatory motivation may be plausibly inferred." *Woods*, 60 F.3d at 1166 (internal citations and quotations omitted). First, there is no evidence that Plaintiff was placed in STG status for filing his complaint in April 2006. While Plaintiff's "Offendertrak"[6] reflects that Plaintiff was identified as an STG Disruptive Core Member and apparently placed on STG status on April 28, 2006, Plaintiff had been placed in administrative segregation at least four times during the four months prior to filing the lawsuit. *See* Ex. E to Motion [52-5] at 2.

In the six months preceding the filing of the lawsuit in April 2006, Plaintiff received four Rule Violation Reports ("RVRs"). *See* Ex. D-1 to Motion [52-4] at 2. The record reflects that Ricky Scott of the MDOC Internal Audit Division (IAD) recommended that Plaintiff be identified as a Disruptive Core Member on January 10, 2006, three months prior to filing the lawsuit against Mr. Epps. *See* Ex. B to Plaintiff's Response [72-2] at 2. Thus, not only has Plaintiff failed to prove retaliatory intent, he has failed to show that but for the alleged retaliatory motive he would not have been placed in STG status. *See McDonald*, 132 F.3d at 231; *see also Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008) (internal citations and quotations omitted) (stating that "[p]rison officials should be accorded the widest possible deference in classifying prisoners' custodial status as necessary to maintain security and preserve internal order").

Plaintiff also claims that he was again placed on STG status in retaliation for filing the

---

[6]Based on Defendants' submissions, Offendertrak is apparently a database/program for MDOC inmates which includes the inmate's personal information, housing location, security status, sentence information, and security alerts. *See* Ex. E to Motion [52-5].

instant lawsuit on or about February 8, 2010.  While Plaintiff's Offendertrak reflects that Plaintiff was placed in Administrative segregation on February 10, 2010 for seven days, he had been placed in administrative segregation at least three times during the three months prior to filing this lawsuit, and was previously identified as an STG Leader in May 2008.  *See* Ex. E to Motion [52-5] at 3-4.   Moreover, Plaintiff's incident report reflects that on February 9, 2010, Plaintiff was caught with a cell phone, which is considered major contraband, during a shakedown and cited with an "extraordinary occurrence," and was also caught with a cell phone and cell phone charger on October 12, 2009 and November 11, 2009, respectively and cited with an "extraordinary occurrence."  *See* Ex. D-1 to Motion [52-4].

Emmitt Sparkman's affidavit further states that Plaintiff is not currently on STG status, but that pursuant to Commissioner Epps' directive on March 2, 2010, Plaintiff was classified to long term segregation ("LTS") after numerous violations (including 43 major violations since his incarceration) for possession of cell phones and weapons capable of causing death, fraternization with staff, and for jeopardizing the safety of other inmates, staff and the public by conspiring to introduce dangerous contraband into the MDOC facilities.  *See* Ex. D and D-1 to Motion [52-4]. Finally, Mr. Sparkman's affidavit states that Plaintiff "has demonstrated through his possession of weapons, electronic devices, fraternization with staff; assaultive behavior; and threats toward staff and other inmates, that he cannot be housed other than in 'close confinement' - 'long term segregation', and the [MDOC], through the Commissioner and Classification Department, has determined that the high security unit at [SMCI], Area-1, Building-8 is the best unit to house Inmate Reginald Simpson, a 'high security risk' inmate."  *See* Ex. D and D-1 to Motion [52-4].

Plaintiff has failed to present either direct evidence of retaliatory motivation by Defendants or "a chronology of events from which retaliatory motivation may be plausibly

7

inferred." *Woods*, 60 F.3d at 1166 (internal citations and quotations omitted).  Moreover, based on the evidence above, even assuming Plaintiff had demonstrated Defendants' retaliatory intent, he has failed to show that but for the alleged retaliatory motive he would not have been placed in STG status.  *See McDonald*, 132 F.3d at 231.

To the extent Plaintiff alleges claims against Defendants in their official capacity, which would in effect be a claim against the MDOC, Plaintiff's claims fail as a matter of law.  As stated above, there is no respondeat superior liability under Section 1983.  *See supra*, *Oliver,* 276 F.3d at 742 & n.6.  Further, Plaintiff has failed to allege, much less demonstrate that the MDOC implemented a policy, custom or practice that was the "moving force" behind the alleged constitutional violation.  *See Monell*, 436 U.S. at 694.

Based on the evidence before the court, Plaintiff has failed to create a genuine issue of material fact as to whether Defendants retaliated against him.  Accordingly, the court concludes that Defendants are entitled to judgment as a matter of law as to Plaintiff's claims against them, in both their individual and official capacities.

### **Failure to Protect**

On August 10, 2009, Plaintiff was attacked by four gang members[7] while he was returning from the dining hall at WCCF.  In summary, Plaintiff claims that Shirley Brown, a correctional officer at WCCF, opened the door to the other "section" or "zone" and four gang members came out into the hallway and attacked him.[8]  Plaintiff believes Officer Brown

---

[7]The four inmates involved in the assault on Plaintiff were Spencer Whitfield, Frederick Lane, Melvin Parker and Deron Jones. *See* Ex. B to Co-Defendants' Motion [57-2].

[8]The facts of the attack are set forth more fully in detail in the court's Opinion and Order [69] granting the Motion for Summary Judgment filed by Jacquelyn Banks and Shirley Brown.

intentionally opened the door for the gang members because they paid her to do so.  As a result of the foregoing, Plaintiff asserts a claim for failure to protect against Defendants Epps and Sparkman.  Plaintiff claims that he has complained to both Christopher Epps and Emmitt Sparkman, via letters and the Administrative Remedy Program, stating that he believed his life was in danger because he was not a gang member, yet was being housed with gang members, and they ignored his complaints.

Under the Eighth Amendment, prison officials have a duty to protect inmates from violence by other prisoners or prison staff.  *Hill v. Thomas*, No. 08-50529, 2009 WL 1181504, at *1 (5th Cir. May 1, 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995)); *Dilworth v. Box*, 53 F.3d 1281, No. 94-41088, 1995 WL 295885, at *1-*3 (5th Cir. Apr. 20, 1995); *Doe v. Georgia Dep't Corr.*, 245 F. App'x 899, 903 (11th Cir. 2007) (citing *Farmer*, 511 U.S. at 837).  However, not every injury "by one prisoner at the hands of another . . .  translates into constitutional liability for prison officials responsible for the victim's safety."  *Hill*, 2009 WL 1181504, at *1 (citing *Farmer*, 511 U.S. at 834; *Horton*, 70 F.3d at 401).

To prevail on a failure to protect claim, Plaintiff must show that "he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection."  *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (citing *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998)).  Deliberate indifference consists of the official being aware of both the "facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (quoting *Farmer*, 511 U.S. at 837).  Furthermore, the Fifth Circuit has held that a negligent failure to protect an inmate is not tantamount to a

9

constitutional violation. *Dilworth*, 1995 WL 295885, at \*1-\*3 (granting defendants' motion for summary judgment even though the plaintiff alleged he sent a letter to the sheriff notifying him that several guards were harassing him; the court reasoned that the letters failed to establish a genuine issue of material fact regarding whether the sheriff was deliberately indifferent to the plaintiff's alleged risks).

According to the Incident Investigation Report completed by Ricky Jackson, Chief of Unit Management, the initial investigation revealed that the assault against Plaintiff was by members of his own gang, the Gangster Disciples.[9]  The assault was related to an ongoing feud with high ranking members of the Gangster Disciples.  Plaintiff had allegedly stepped away from his leadership role in the organization after leaving the Gang Unit at Parchman.  The Report further stated that an interview with Plaintiff revealed that Inmate Jones called the "hit" on him because he was no longer affiliated with the gang, but that Inmate Jones was still intimidated by Plaintiff.  *See* Incident Report, Ex. E to Co-Defendants' Motion [57-5] at 1-3.

According to Emmitt Sparkman's affidavit, he received correspondence from Plaintiff regarding his claim of being in fear for his life by STG inmates at SMCI, but Plaintiff did not identify any individual inmates.  Mr. Sparkman's affidavit reflects that he contacted SMCI to provide for Plaintiff's safety and security.  Finally, Mr. Sparkman states that Plaintiff is allowed no direct contact with offenders he has "red-tagged"[10] or placed on his "keep separates" list at his

---

[9]Plaintiff denies ever being a gang member or taking part in any gang activities.  *See* Declaration [74].

[10]The "red-tag" process is a procedure that allows inmates who are intimidated or threatened by other inmates to separate themselves from those inmates.

current housing assignment at SMCI.[11]  *See* Ex. D to Motion [52-4].

Based on the foregoing, other than Plaintiff's conclusory allegations, there is no competent summary judgment evidence to show that Mr. Epps or Mr. Sparkman were deliberately indifferent to Plaintiff's need for protection from a substantial risk of serious harm.[12] *See Grissom*, 1993 WL 560256, at *3 (internal quotations and citations omitted; brackets in original) ("Wantonness, in the context of a failure-to-protect claim, requires that the defendant be conscious of the inevitable or probable results of [his] failure to take preventative action.").

Plaintiff does not allege that Mr. Epps or Mr. Sparkman were personally involved in the attack by the gang members on August 10, 2009.  Rather, he claims that they are "legally

---

[11]While the inmates involved in the assault on Plaintiff (Inmates Spencer Whitfield, Frederick Lane, Melvin Parker and Deron Jones) at WCCF are listed on his "keep separates" list, the effective date for those inmates is dated August 11, 2009, the date after the attack on Plaintiff.  *See* Ex. F to Motion [52-6].

[12]Plaintiff claims he submitted letters to Mr. Epps and Mr. Sparkman about the threats to his safety and was never allowed to sign red-tags or to be removed from his dangerous housing unit.  He further claims he personally spoke to Mr. Sparkman about the threats he was receiving. *See* Response [73].  However, with the exception of a staff member Plaintiff "assumed" worked for the STG leaders, Plaintiff fails to identify the individuals he allegedly attempted to red-tag and has failed to put forth any evidence of any attempts to red-tag anyone, and does not allege he identified any specific individual to Mr. Sparkman during their conversation.  *See* Response [73] and Ex. G to Response [72-7]. Plaintiff does state that he attempted to red-tag everyone who was a member of the Gangster Disciples, but again fails to identify any individual inmates or put forth any evidence of such an attempt.  *See* Declaration [74].

As noted by Defendants, in support of his motion for injunctive relief [22] Plaintiff submitted affidavits from himself and fellow inmate, Darius Dennis, stating that he attempted to sign red-tags and to be moved from the STG unit.  However, the affidavits are dated months after this complaint was filed and approximately nine months after the assault by the other inmates. *See* Ex. C to Motion [52-3].  Indeed, according to inmate Dennis's affidavit, he overheard Plaintiff tell Superintendent Ron King and Warden Regina Hancock that he feared for his life on May 2, 2010.  Thus, these affidavits do not support Plaintiff's claim that Defendants Epps and Sparkman were deliberately indifferent to his need for protection from the assault in August 2009.

responsible for the actions of their employees once they have been notified of the illegal actions

....”  Response [72] at 1.  Plaintiff further states, “Defendants Epps and Sparkman are sued

because of their supervisory capacities by virtue of their knowledge of the said claims but failed,

by acting with deliberate indifference to . . . protect the Plaintiff from an obvious risk of attack

even after receiving notice.”  *Id.* at 2.  As stated above, there is no respondeat superior or

vicarious liability under Section 1983.  *See supra*, *Oliver,* 276 F.3d at 742 & n.6*; Thompkins*,

828 F.2d at 304.

Moreover, Plaintiff has failed to demonstrate a sufficient causal connection between

Defendants’ alleged wrongful conduct and the alleged constitutional violation.  *See Thompkins*,

828 F.2d at 304; *Ashcroft*, 129 S. Ct. at 1948.  While Plaintiff claims he “notified” Defendants of

the threats and fears for his life, he has failed to set forth any evidence that he identified the

individuals involved in the attack and that Defendants were deliberately indifferent to his need

for protection.  Further, as set forth above, Plaintiff alleges the attack occurred because Officer

Brown opened a door that should not have been opened because she was “in on” the attack.

Plaintiff has not offered any evidence whereby Defendants Epps and Sparkman would be liable

for Officer Brown’s alleged improper conduct.[13]

To the extent Plaintiff alleges claims against Defendants in their official capacity, which

would in effect be a claim against the MDOC, Plaintiff’s claims fail as a matter of law.  As stated

above, there is no respondeat superior liability under Section 1983.  *See supra*, *Oliver,* 276 F.3d

at 742 & n.6.  Further, Plaintiff has failed to allege, much less demonstrate that the MDOC

implemented a policy, custom or practice that was the “moving force” behind the alleged

---

[13]As stated above, the claims against Shirley Brown have been dismissed.  *See* Order
[69].

constitutional violation.  *See Monell*, 436 U.S. at 694.

Based on the evidence before the court, Plaintiff has failed to create a genuine issue of material fact as to whether Defendants were deliberately indifferent to his need for protection. Accordingly, the court concludes that Defendants Epps and Sparkman are entitled to judgment as a matter of law as to Plaintiff's claims against them, in both their individual and official capacities.

### **Qualified Immunity**

Although Defendants have raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant is entitled to dismissal on that basis."  *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee,* 195 F.3d 234, 236 (5th Cir. 1999).  Because the court finds that the Plaintiff's claims are not cognizable as constitutional claims, it declines to address the issue of whether the Defendants are entitled to qualified immunity.  *Wells*, 45 F.3d at 93.

CONCLUSION

For the reasons stated above, the court finds that Defendants' Motion for Summary Judgment [52] should be granted.[14]  Accordingly,

───────────────

[14]Because the court finds that Plaintiff has failed to establish a genuine issue of material fact as to whether Defendants Epps and Sparkman violated his constitutional rights, the court does not address Defendants' exhaustion argument.  Regarding the failure to protect claim, the court notes Plaintiff's claims that he could not write for days after the assault due to his injuries and because he was on pain medication.  He claims he submitted an administrative remedy request to the legal claims adjudicator in September 2009 while housed at Carroll County Regional Facility, and submitted an emergency grievance to Commissioner Epps and never received a response.  *See* Response [73] at 7.  Regarding the retaliation claim, Plaintiff claims he submitted two grievances in an effort to properly exhaust his administrative remedies.  *Id.* at 6-7.

IT IS, THEREFORE, ORDERED:

That the Defendants' Motion for Summary Judgment [52] is GRANTED and that this action is dismissed with prejudice.

A separate judgment will be filed herein in accordance with Federal Rule of Civil Procedure 58.

SO ORDERED this the 15th day of October, 2010.

s/ Michael T. Parker
United States Magistrate Judge